# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

EUGENE DEBBS PHILLIPS, III     *
    *
    *
      Plaintiff,     *
    *
      vs.     *       CV 213-069
    *
CONSOLIDATED PUBLISHING     *
COMPANY, INC., PUBLIX     *
SUPERMARKETS INC., CARLTON     *
FIELDS, P.A., H. BRANDT AYERS,     *
BENJAMIN CUNNINGHAM, JASON     *
BACAJ, WAYNE RUPLE, KENNETH A.     *
TINKLER, and JOHN ALRED,     *
    *
    *
      Defendants.     *

## ORDER

Presently before the Court are three Motions to Dismiss for Lack of Personal Jurisdiction. The first Motion to Dismiss (Dkt. No. 45) was filed by Defendants Consolidated Publishing Company, Inc. ("Consolidated"), Jason Bacaj ("Bacaj"), Wayne Ruple ("Ruple"), John Alred ("Alred"), and Benjamin Cunningham ("Cunningham"). The second Motion to Dismiss (Dkt. No. 59) was filed by H. Brandt Ayers ("Ayers"). The third such motion (Dkt. No. 71)

1

was filed by H. Ray Allen ("Allen") and Kenneth A. Tinkler ("Tinkler"). Also before the Court is a Motion to Dismiss for Failure to State a Claim (Dkt. No. 70) filed by Defendants Allen, Tinkler, Carlton Fields, P.A. ("Carlton Fields"), and Publix Super Markets, Inc. ("Publix"). Carlton Fields and Publix do not contest personal jurisdiction. The first Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 45) is **GRANTED** in part **and DENIED** in part. The second Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 59) is **GRANTED**. The third Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 71) is **GRANTED**. The Motion to Dismiss for Failure to State a Claim (Dkt. No. 70) is **GRANTED**.

### FACTUAL BACKGROUND

Plaintiff alleges various claims stemming from two articles published in The Anniston Star and The Cleburne Times, two Alabama newspapers owned by Consolidated. Plaintiff asserts that Defendant Bacaj, staff writer for The Anniston Star, obtained Plaintiff's sealed, confidential probate court records that he used in writing the articles. Dkt. No. 16, pg. 21. Bacaj retrieved

Plaintiff's records from the DeKalb County courthouse. Dkt. No. 45, Exh. C. According to Bacaj, the documents were public record in Georgia. Id. The records were used in articles about an Alabama land deal for which the entire investigation was conducted in Alabama, with the exception of Bacaj retrieving records from DeKalb County, Georgia. Dkt. No. 45, Exhs. C, E. Plaintiff asserts that Consolidated and Bacaj are liable for the invasion of Plaintiff's privacy associated with the articles, as are Ayers, Publisher of The Anniston Star, Cunningham, Editor of The Anniston Star, Ruple, Editor of The Cleburne News, and Alred, Publisher of The Cleburne News. Id. at pgs. 13-20.

The Anniston Star is a newspaper published in Anniston, Alabama. Dkt. No. 45, Exh. A. Of the 18,000 copies of the newspaper delivered, five are delivered to Georgia addresses. Id. Both The Anniston Star and The Cleburne News claim not to conduct business in Georgia or solicit business from Georgia residents. Id.; Dkt. No. 45, Exh. D. Defendants submitted affidavit evidence stating that there are no racks from which The Anniston Star is sold in

3

Georgia. Dkt. No. 45, Exh. A. Plaintiff, however, alleges that he, while in Georgia, purchased advertising space from Consolidated's advertising department and that he purchased The Anniston Star from two locations in Georgia. Dkt. No. 60, Exh. C. Plaintiff also presented printouts from The Anniston Star website that show obituaries of Georgia residents and Georgia businesses from a directory search. Dkt. No. 60, Exhs. A, C.

Plaintiff further alleges that Publix's attorneys, Allen and Tinkler, working for the law firm Carlton Fields, are liable for finding the articles online and sending them to Plaintiff's employer, the Town of Campbellton, Florida. Dkt. No. 16, pg. 4. Plaintiff contends that Allen and Tinkler threatened to spread the articles throughout Florida to encourage Campbellton, Plaintiff's employer, to drop a legal action. Id. at pg. 5. Allen, Tinkler, Carlton Fields, and Publix allege that Plaintiff's claims fall within Florida's litigation privilege, and should therefore be dismissed. Dkt. No. 70, pg. 23-24.

Allen and Tinkler are attorneys licensed to practice law in Florida, and neither transacts business in Georgia

4

AO 72A
(Rev. 8/82)

or owns property in Georgia. Dkt. Nos. 71-1, pg. 1, 71-2, pg. 1. Allen and Tinkler were retained by John Attaway, General Counsel for Publix, to represent the interests of Publix and its stockholders in a condemnation proceeding filed by the Town of Campbellton, Florida. Dkt. No. 71-1, pg. 1. Allen and Tinkler contend that the case was sealed by the time they were retained, which prevented them from attaining information relating to the proceeding from the presiding judge, clerk's office, or attorneys. Id. at pg. 2. Allen claims that he attempted to obtain a copy of the sealed complaint, but that part-time attorney for Campbellton, Casey Bigelow, the Jackson County Clerk of the Court, and the Clerk of the Court's attorney all refused to provide him with the complaint because the case was sealed. Dkt. No. 71, pg. 2. Allen and Tinkler sent public records requests to the Town of Campbellton, but both went unanswered. Dkt. Nos. 71-1, pg. 2, 71-2, pgs. 2-3. According to Tinkler, he requested information concerning people and entitles mentioned within the newspaper articles. Dkt. No. 71-2, pg. 2. When Tinkler's request went unanswered, he contacted the Mayor of Campbellton and

5

requested a response from his office in Tampa, Florida. Dkt. No. 71-2 at pg. 2. Allen contends that he emailed Bigelow the two newspaper articles published on the Internet from Allen's office in Tampa, Florida after Bigelow refused to send a copy of the complaint to Allen. Dkt. No. 71-1, at pg. 3. In March 2011, Carlton Fields filed a Motion to Intervene in the proceeding on behalf of Publix. Dkt. No. 71-1, pg. 2. Campbellton voluntarily dismissed the case the following day. Id. In May 2011, Judge Christopher Patterson issued an Order to Show Cause regarding the necessity for the condemnation to be sealed. Id. The sealed file was subsequently unsealed. Id.

Plaintiff alleges that Allen and Tinkler are responsible for disseminating the newspaper articles "containing Plaintiff's psychiatric information to Campbellton." Dkt. No. 16, pg. 28. Plaintiff accuses Allen and Tinkler of "dissemination of Plaintiff's intangible personal property." Id. at pg. 29. Plaintiff also contends that Allen and Tinkler threatened to further disseminate the articles to the Florida press in order to embarrass Campbellton, Plaintiff's employer, and to encourage the

AO 72A
(Rev. 8/82)

Town Council to withdraw a case "for limited agent authority over voting rights." Id. at pg. 31. Plaintiff alleges that Publix and Carlton Fields are vicariously liable for the actions of Allen and Tinkler. Id. at pgs. 14, 16. Plaintiff believes that Allen and Tinkler's motivation for emailing the articles to Campbellton was to "coerc[e] Campbellton to remove the legal action from the court." Id. at pg. 37.

## LEGAL STANDARD

### I.  Motion to Dismiss for Lack of Personal Jurisdiction

A plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant. Cable/Home Commc'n. Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). The burden returns to the plaintiff to produce evidence of jurisdiction if "the defendant challenges jurisdiction by submitting affidavit evidence in support of its position." Diamond Crystal Brands, Inc. v. Food Movers Int'l Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). The district court is required to accept facts the plaintiff

7

puts forth in the complaint as true, if they are undisputed by the defendant's affidavits. Cable/Home Commc'n Corp., 902 F.2d at 855. Further, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Diamond Crystal Brands, Inc., 593 F.3d at 1257 (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

## II. Motion to Dismiss for Failure to State a Claim

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although "detailed factual allegations" are not required to survive a 12(b)(6) motion, "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In assessing a 12(b)(6)

AO 72A
(Rev. 8/82)

motion to dismiss, the Court is "limited primarily to the face of the complaint and attachments thereto." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997). The Court must "construe[] the complaint in the light most favorable to the plaintiff and accept [] all well-pled facts alleged . . . in the complaint as true." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). A court should only grant a Rule 12(b)(6) motion to dismiss if the plaintiff is unable to plead facts sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 545.

## DISCUSSION

### I. Motions to Dismiss for Lack of Personal Jurisdiction

Assessing whether a court has personal jurisdiction over a nonresident defendant entails a two-part analysis: 1) analyzing jurisdiction under the state long-arm statute, and 2) analyzing whether the nonresident defendant has minimum contacts with the forum state sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. Cable/Home Commc'n Corp., 902 F.2d at 855. The Court must first assess whether there is a basis for personal

AO 72A
(Rev. 8/82)

jurisdiction under the Georgia long-arm statute before

performing the minimum contacts analysis. Madara v. Hall,

916 F.2d 1510, 1514 (11th Cir. 1990).

## A. Georgia Long-Arm Statute Analysis

In Diamond Crystal Brands, the Eleventh Circuit adopted

the Georgia Supreme Court's application of the Georgia

Long-Arm Statute as outlined in Innovative Clinical &

Consulting Servs., LLC v. First Nat'l Bank of Ames, holding

that "a trial court must engage in a separate, literal

application of the Georgia long-arm statute in addition to

a due process inquiry in deciding whether personal

jurisdiction exists over a nonresident defendant." 593 F.3d

at 1254. Georgia's long-arm statute states that Georgia

courts:

> may exercise personal jurisdiction over any
> nonresident . . . , as to a cause of action
> arising from any of the acts, omissions,
> ownership, use, or possession enumerated in this
> Code section, in the same manner as if he or she
> were a resident of this state, if in person or
> through an agent, he or she:
>
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within
> this state . . .;
> (3) Commits a tortious injury in this state
> caused by an act or omission outside this
> state if the tort-feasor regularly does

AO 72A
(Rev. 8/82)

or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . .;

O.C.G.A. § 9-10-91(1)-(3).

For a court to have personal jurisdiction over a nonresident defendant, at least one prong of this statute must be satisfied. Diamond Crystal Brands, Inc., 593 F.3d at 1260. The Georgia Supreme Court explained in Innovative Chemical that the long-arm statute analysis must not be coextensive with the due process analysis, but that both must be analyzed separately. Id. at 1261-63.

Determining exactly when an entity "transacts any business" is not black and white. While Innovative Chemical removed certain limitations in an effort to broaden the interpretation of Georgia's long-arm statute (such as physical presence in contract cases), the court did not provide much guidance for interpreting the "transacts any business" language of prong (1). Id. at 1261-62. In deciding whether a court has reached "the limits of due process," Georgia courts apply the following three-part test:

> Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

Crossing Park Props., LLC v. JDI Fort Lauderdale, LLC, 729 S.E.2d 605, 609 (Ga. Ct. App. 2012). The Georgia Court of Appeals clarified that "transacting any business" requires more than "mail orders which require acceptance in a nonresident state" and specified that "transacting business would not be involved where the sole local performance was delivery of items ordered to this state." Coe & Payne Co. v. Wood-Mosaic Corp., 189 S.E.2d 459, 467 (Ga. Ct. App. 1972)(noting that company had no agents or sales representatives in Georgia, did not solicit orders in Georgia, and only had direct contact in the form of two isolated sales, and that this was insufficient for "transacting any business" in Georgia). Even where a company does not solicit business in the forum state, the company can "transact

AO 72A
(Rev. 8/82)

business" with the forum. See Vibratech, Inc. v. Frost,
661 S.E.2d 185, 190-91 (Ga. Ct. App. 2008)(noting that
selling a product to a company in Alabama with the
expectation that it would be installed in planes and
resold in other states, including Georgia, was
sufficient to find that the company "transacted
business" in Georgia).

The Eleventh Circuit has explained that "[t]he
statutory requirement that a nonresident defendant transact
any business in Georgia must mean something more than, and
cannot simply equate to, mere minimum contacts in a due
process sense." Diamond Crystal Brands Inc. 593 F.3d at
1262. In assessing personal jurisdiction, binding precedent
has distinguished between small and large amounts of
business in the forum state. See Wolfson v. Houston Post
Co., 441 F.2d 735, 736 (5th Cir. 1971.)[1] In Wolfson, the
Fifth Circuit affirmed a dismissal for lack of personal
jurisdiction where the only contacts of a defendant
newspaper with Florida were selling between 10,000 and

---

[1] Decisions of the United States Court of Appeals for the Fifth
Circuit handed down by that court prior to September 30, 1081,
are binding precedent in the Eleventh Circuit. Bonner v. City of
Prichard, Ala., 661 F.2d 1206 (11th Cir. 1981).

AO 72A
(Rev. 8/82)

11,000 copies of newspapers to unsolicited subscribers, where the circulation in Florida constituted only .008% of the daily paper and .15% of the Sunday paper total sales, and where advertising revenue generated in Florida was less than .153% of total advertising revenue. Id.

Defendants argue that Georgia's long-arm statute does not convey personal jurisdiction upon this Court. Dkt. No. 45. The Court will address whether the Court has long-arm jurisdiction over each Defendant separately.

### 1) Defendants Ruple, Alred, and Cunningham

Plaintiff alleges that Ruple, as Editor of The Cleburne News, Alred, as Publisher of The Cleburne News, and Cunningham, as Editor for The Anniston Star, are liable for breaching a duty of care to Plaintiff by publicly disseminating his confidential information. Dkt. No. 16, pgs. 18, 20. Whether these defendants owed a duty to Plaintiff is irrelevant at the personal jurisdiction stage, as the Court must first determine if it has jurisdiction to make a liability determination.

Ruple, Alred, and Cunningham presented affidavits stating that they are all residents of Alabama and own no property

14

AO 72A
(Rev. 8/82)

in Georgia. Dkt. No. 45, Exhs. E, D, B. Ruple did not participate in the investigation or writing of the articles at issue, and has no contacts with Georgia. Id. at Exh. E. Alred and Cunningham reviewed and edited the article from Alabama and neither conducts or solicits business from Georgia. Id. at Exhs. D, B. Ruple, Alred, and Cunningham did not enter Georgia to perform any actions pertaining to the articles at issue. Id. at Exhs. D, E, B.

Plaintiff has presented no allegations or evidence that Ruple, Alred, or Cunningham transacts business in Georgia, committed a tort or omission within Georgia, committed a tort outside Georgia and regularly solicits business, engages in a persistent course of conduct, or derives substantial revenue from Georgia, as required by O.C.G.A. § 9-10-91. Consequently, this Court does not have long-arm jurisdiction over these Defendants.

## 2) Defendant Ayers

Plaintiff alleges that Ayers, as Publisher of The Anniston Star, is liable for breaching a duty of care to Plaintiff by publicly disseminating his confidential information. Dkt. No. 16, pg. 17. Ayers submitted an

affidavit stating that he is a resident of Alabama, owns no real property in Georgia, and has no contacts with Georgia. Dkt. No. 59, Exh. A. He did not participate in writing or investigating the articles at issue and did not enter Georgia to conduct actions pertaining to the articles. Id.

Plaintiff has presented no allegations or evidence that Ayers transacts business in Georgia, committed a tort or omission within Georgia, committed a tort outside Georgia and regularly solicits business, engages in a persistent course of conduct, or derives substantial revenue from Georgia, as required by O.C.G.A. § 9-10-91. Consequently, this Court does not have long-arm jurisdiction over Ayers.

### 3) Defendant Bacaj

Plaintiff alleges that Bacaj is liable for intentionally obtaining confidential court records in Georgia that he transported to Alabama, published, and that subsequently caused Plaintiff damage. Dkt. No. 16 at pg. 21. Plaintiff contends that in doing so, Bacaj violated a duty of care owed to Plaintiff. Id. at 25. It is undisputed that Bacaj entered Georgia to retrieve Plaintiff's records from the DeKalb County, Georgia courthouse. Dkt. No. 45,

16

AO 72A
(Rev. 8/82)

Exh. C. The basis for Plaintiff's allegations against Bacaj stems from activity in Georgia—allegedly breaching a duty to Plaintiff by obtaining confidential records in Georgia and publishing them.

As noted above, at this stage, the Court is required to accept facts the plaintiff puts forth in the complaint as true, if they are undisputed by Defendant's affidavits. Cable/Home Commc'n Corp., 902 F.2d at 855. Further, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Diamond Crystal Brands, Inc., 593 F.3d at 1257 (quoting Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). Here, Plaintiff alleges that Bacaj breached a duty to Plaintiff by wrongfully obtaining confidential records. Bacaj contends that the documents were public record in Georgia, and therefore not confidential. Dkt. No. 45, Exh. C. Consequently, Plaintiff's complaint conflicts with Bacaj's affidavit, imposing a duty on the Court to construe reasonable inferences in favor of Plaintiff. Plaintiff raises an

17

AO 72A
(Rev. 8/82)

allegation that Bacaj committed tortious activity within the State of Georgia, and the Court must construe the inference that the records were confidential in favor of Plaintiff. As a result, Georgia's long-arm statute conveys personal jurisdiction over Bacaj through O.C.G.A. § 9-10-91(2), because Plaintiff alleges that Bacaj committed a tortious act within Georgia.

### 4) Defendant Consolidated

Plaintiff alleges that Consolidated, as owner of The Anniston Star and The Cleburne News, is liable for tortiously publishing Plaintiff's confidential psychiatric information through The Anniston Star and The Cleburne News. Dkt. No. 16, pg. 13. Plaintiff presented evidence to show Consolidated's connections with Georgia. Plaintiff submitted an affidavit in which he affies that he purchased The Anniston Star at two locations in Georgia. Dkt. No. 60, Exh. C. Plaintiff also submitted website printouts from The Anniston Star's website that show obituaries of Georgia residents and Georgia businesses from a directory search. Dkt. No. 60, Exhs. A, C.

AO 72A
(Rev. 8/82)

Bob Davis, associate publisher and editor of The Anniston Star, affied that The Anniston Star has no racks for newspaper sales, and that of the approximately 18,000 copies of the newspaper delivered, five are delivered to Georgia addresses. Dkt. No. 45, Exh. A. Alred, publisher for The Cleburne News, affied that there are no racks or sales of subscriptions to The Cleburne News in Georgia. Dkt. No. 45, Exh. D.

In an affidavit submitted by Defendants, Robert Earl Jackson, III, Vice President of Operations and Sales for Consolidated, stated:

> most of the obituaries published in the Anniston Star that reference persons who died in Georgia also mention that the person used to be a resident of northeast Alabama or a person who was born in northeast Alabama . . . . This process reflects the fact that the funeral homes placing the obituaries want the obituaries to appear in the Anniston market. They do not reflect any solicitation by the newspaper of their business. Most of these obituaries are faxed or emailed to us without any prior knowledge of the request.

Dkt. No. 72-1, Exh. F, pg. 3.

Regarding the Georgia businesses appearing in a directory search of The Anniston Star, Jackson explained that any business can use a service called "Radiate," which

AO 72A
(Rev. 8/82)

signs up businesses to display on newspaper directories. Dkt. No. 72-1, pg. 2. He stated, "The Anniston Star only solicits internet advertising from businesses in our market. The remainder of online ads is placed by online advertising agencies, most notably Google. Our market is designed as northeast Alabama."

That Plaintiff's purchased advertising space from Consolidated while living in Georgia does not show that Consolidated transacted business in Georgia. Similarly, Plaintiff's printout of obituaries published in The Anniston Star also fails to establish that Consolidated transacted business in Georgia. Rather, as explained by Mr. Jackson, it only reflects that The Anniston Star publishes obituaries that funeral homes and individuals send to the newspaper. Furthermore, the presence of Georgia businesses on The Anniston Star website directory fails to establish personal jurisdiction because, as indicated by Mr. Jackson, the listings of any Georgia businesses on the directory were unsolicited. However, Plaintiff has presented evidence which conflicts with Defendant's affidavits. Plaintiff swears that he can-and did-purchase The Anniston

Star in Georgia. This, he claims, is sufficient to convey long-arm jurisdiction on Consolidated through the "transacts any business" clause of O.C.G.A. § 9-10-91.

As noted above, an entity "transacts any business" in Georgia if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." Although Coe & Payne Co. specified that "transacting any business" requires more than mail orders into the nonresident state, that case involved two isolated sales into the forum, as opposed to daily deliveries of a newspaper into the forum. At this stage in the litigation, there is a conflict in the evidence regarding whether Consolidated sells its paper in Georgia. As noted above, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Diamond Crystal Brands, Inc., 593 F.3d at 1257

(quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 1986).

### 5) Defendants Allen and Tinkler

Plaintiff alleges that Allen and Tinkler are liable for disseminating Plaintiff's confidential psychiatric information to Campbellton. Dkt. No. 16, pgs. 28-39. Plaintiff has failed to present any evidence of any connection between Allen and Tinkler and the State of Georgia to satisfy Georgia's long-arm statute. Allen and Tinkler are attorneys licensed to practice law in Florida, and neither transacts business in Georgia or owns property in Georgia. Dkt. Nos. 71-1, pg. 1, 71-2, pg. 1. Allegations by Plaintiff against Allen and Tinkler are based on actions that occurred solely within the State of Florida. Plaintiff has presented no allegations or evidence that either Allen or Tinkler transacts business in Georgia, committed a tort or omission within Georgia, committed a tort outside Georgia and regularly solicits business, engages in a persistent course of conduct, or derives substantial revenue from Georgia, as required by O.C.G.A. § 9-10-91. Consequently, Plaintiff has failed to meet his burden to

22

show that this Court has long-arm jurisdiction over Allen and Tinkler.

## B. Minimum Contacts Analysis

Assessing personal jurisdiction over a nonresident defendant also requires ensuring that due process requirements are satisfied. This determination requires assessing 1) whether the Defendants have established "minimum contacts" with Georgia, and 2) whether exercising personal jurisdiction over Defendants would offend "traditional notions of fair play and substantial justice." Williams Elec. Co., Inc. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir. 1988). A defendant only has "minimum contacts" with a forum if the defendant has "'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." Madara, 916 F.2d 1510, 1516 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). A defendant has fair warning if he has "'purposefully directed' his activities at the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. (citing Burger King Corp., 471 U.S. at 472). The defendant's own actions

AO 72A
(Rev. 8/82)

must establish the connection with the forum. Madara, 916 F.2d at 1516 (noting that only actions by the defendant himself can create a "substantial connection" with the forum state but that "the ability to see that the acts of third persons may affect the forum" is not sufficient). A defendant's contacts with a forum "are not to be judged according to their employer's activities there." Calder v. Jones, 465 U.S. 783, 790 (1984).

Determining whether personal jurisdiction would satisfy "fair play and substantial justice" requires looking at factors such as:

> the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies.

Madara, 916 F.2d at 1517 (citing Burger King, 471 U.S. at 477).

**1) Defendants Ruple, Alred, and Cunningham**

Plaintiff has not shown that either Ruple, Alred, or Cunningham has "purposefully directed" activities at Georgia. As noted above, only actions by a defendant can

24

create a "substantial connection" with the forum state, and "the ability to see that the acts of third persons may affect the forum" is not sufficient. Plaintiff has not alleged or shown that Ruple, Alred, or Cunningham performed any activities within or directed at the forum state, and due process therefore prevents this Court from asserting personal jurisdiction over these defendants.

Plaintiff urges application, extrapolation really, of the "Calder effects test" set forth in Calder v. Jones, 465 U.S. 783, 788 (1984). Calder concerned an allegedly libelous story impugning the professionalism of a television entertainer whose career was based in California. Calder, 465 U.S. at 788. The article was published in a national magazine that had a large circulation in California. Id. at 784. According to the Supreme Court, California was the "focal point both of the story and of the harm suffered." Id. at 789.[2] That case, unlike the case at hand, was a libel case where the allegations in the article were "expressly aimed at

---

[2] In Calder, the United States Supreme Court decided that jurisdiction was proper in California based on the "effects" in California of a reporter's conduct in Florida, specifically the writing and publishing of an article pertaining to California activities, where California was "the focal point of both the story and of the harm suffered." Calder, 465 U.S. at 785-89.

AO 72A
(Rev. 8/82)

California." Id. In this non-libel case, however, the allegations in the articles were expressly aimed at Alabama and pertained to activities not occurring in Georgia. The articles pertained to a land deal in Alabama that discussed Plaintiff and his participation in Alabama activities, but the only connection to Georgia was that Plaintiff lived there. The salient facts of Calder are too different for its effects test to serve as a basis for conveying personal jurisdiction over these defendants. Furthermore, that the editor and publisher defendants in this case might foresee that Plaintiff could possibly feel the effects of the article in Georgia is insufficient to create personal jurisdiction. According to the Supreme Court in Calder, "[t]he mere fact that [Defendants] can 'foresee' that the article will be circulated and have an effect in [the forum] is not sufficient for an assertion of jurisdiction."

**2) Defendant Ayers**

Plaintiff has also failed to show that Ayers had minimum contacts with the forum state. For the same reasons that due process prevents this Court from asserting personal

jurisdiction over Ruple, Alred, and Cunningham, this Court does not have personal jurisdiction over Ayers.

### 3) Defendant Bacaj

It is undisputed that Bacaj traveled to Georgia for the sole purpose of retrieving Plaintiff's records from DeKalb County. The litigation at issue results from an article that Bacaj wrote based on these records. Plaintiff alleges that Bacaj's breaches of duties toward him stemmed from both obtaining his records from Georgia and also from writing and publishing the articles. Thus, litigation has resulted from alleged injuries that "ar[o]se out of or relate to" Bacaj's activities in Georgia. Consequently, Bacaj has established minimum contacts with Georgia. Furthermore, litigating the dispute in Georgia does not offend "traditional notions of fair play and substantial justice." Although Bacaj currently lives in Montana, the alleged tort occurred in Georgia, and the entire litigation at issue stems from activities begun by Bacaj in Georgia. If the allegations that Bacaj inappropriately obtained confidential records from a county court in Georgia are true, Georgia has an interest in litigating this dispute

27

AO 72A
(Rev. 8/82)

and preventing a similar occurrence from taking place again within its' judicial system. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984)(noting that a state has an interest in redressing injuries that occur within that state). Furthermore, as this case has already bounced back and forth between district courts, litigating the dispute in this Georgia district at the present time will help achieve "the most efficient resolution of controversies." Nothing in this Order should be read as preventing Bacaj from asserting future dispositive motions.

### 4) Defendant Consolidated

As to minimum contacts, the evidence is in dispute at this point. The Plaintiff has brought forth evidence disputing Defendant Consolidated's contention that Consolidated does not sell papers in Georgia. Based on the conflict, dismissal is inappropriate at this time. However, nothing in this Order shall prohibit Consolidated from reurging this issue following discovery.

### 5) Defendants Allen and Tinkler

Plaintiff has not shown or even alleged that Allen and Tinkler have any contacts with the State of Georgia, much

AO 72A
(Rev. 8/82)

less minimum contacts. Through practicing law solely in Florida and not maintaining any connection with Georgia, Allen and Tinkler did not "purposefully direct" activities at the forum. Consequently, this Court does not have personal jurisdiction over these defendants.

## II.  12(b)(6) Motion to Dismiss

Defendants Allen, Tinkler, Carlton Fields, and Publix filed a 12(b)(6) Motion to Dismiss. As noted above, this Court does not have personal jurisdiction over Allen and Tinkler and they are dismissed for that reason. As discussed below, Carlton Fields and Publix are entitled to dismissal on 12(b)(6) grounds.

### A. Choice of Law

In choice of law questions, Georgia courts apply the law of the state where the injury occurred. Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc., 897 F. Supp. 1472, 1475 (S.D.Ga. 1995). "Georgia follows the traditional rule that in tort actions, the law of the place of the injury—or *lex loci delicti*—governs the resolution of the substantive issues." Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, 713 F.2d 618, 621 (11th Cir. 1983). It is undisputed

that the actions allegedly leading to Plaintiff's injury and at issue in this 12(b)(6) Motion occurred in Florida, thereby necessitating application of Florida law.

## B. Florida Litigation Privilege

Defendants Carlton Fields and Publix allege that Plaintiff's claims fall within Florida's litigation privilege, and should therefore be dismissed. Dkt. No. 70, pg. 23-24. "Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1275 (11th Cir. 2004). The litigation privilege is an affirmative defense. LatAm Invs., LLC v. Holland & Knight, LLP. 88 So.3d 240, 245 (Fla. Dist. Ct. App. 2011). However, "[i]f the face of the complaint contains allegations which demonstrate the existence of an affirmative defense, then such defense can be considered on a motion to dismiss." Id. (quoting Vaswani v. Ganobsek, 402 So.2d 1350, 1351 (Fla. Dist. Ct. App. 1981)). "Florida courts have . . . made it abundantly clear that any affirmative defense, including the litigation privilege, may be considered in resolving a motion to dismiss when " 'the complaint affirmatively and

AO 72A
(Rev. 8/82)

clearly shows the conclusive applicability' of the defense

to bar the action." Jackson, 372 F.3d at 1277 (quoting

Reisman v. Gen. Motors Corp., 845 F.2d 289, 291 (11th Cir.

1988))(assessing whether the litigation privilege was

properly considered on a motion to dismiss and determining

that because "the complaint 'affirmatively and clearly'

establish[ed] that the challenged conduct related to the []

litigation . . . the litigation privilege bar[red] the

action"). This privilege applies to all misconduct, whether

based in statute or common law. Echevarria, McCalla,

Raymer, Barret & Frappier v. Cole, 950 So.2d 380, 384 (Fla.

2007).

> [A]bsolute immunity must be afforded to any act
> occurring during the course of a judicial
> proceeding, regardless of whether the act involves
> a defamatory statement or other tortious behavior
> such as the alleged misconduct at issue, so long
> as the act has some relation to the proceeding . .
> . . [P]articipants [must] be free to use their
> best judgment in prosecuting or defending a
> lawsuit without fear of having to defend their
> actions in a subsequent civil action for
> misconduct.

Wolfe v. Foreman, 128 So.3d 67, 69 (Fla. Ct. App. 2013)

(quoting Levin, Middlebrooks, Mabie, Thomas, Mayes &

Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So.2d 606, 608

(Fla.1994)). The policy behind the rule is "the perceived necessity for candid and unrestrained communications in []proceedings, free of the threat of legal actions predicated upon those communications." <u>Echevarria</u>, 950 So.2d at 384.

The litigation privilege does not only apply to in-court proceedings. Rather, "[t]he privilege arises upon the doing of any act necessarily preliminary to judicial proceedings." <u>BOCA Investors Group, Inc. v. Potash</u>, 835 So.2d 273, 275 (Fla. Dist. Ct. App. 2002)(quoting <u>Burton v. Salzberg</u>, 725 So.2d 450 (Fla. Dist. Ct. App. 1999). In <u>BOCA Investors Group</u>, the court determined that the litigation privilege applied where defendants filed three lawsuits that allegedly interrupted the plaintiff's efforts to purchase property, thereby leading the plaintiff to file a tortious interference with a business relationship suit. <u>Id.</u> at 274. In <u>LatAm Investments, LLC</u>, the court ruled that post-judgment actions of issuing subpoenas and writs of garnishment fell within the litigation privilege. <u>LatAm Investments</u>, 88 So.3d at 242 (noting "it is undisputed that

AO 72A
(Rev. 8/82)

the acts complained of here occurred during and were related to the judicial proceedings").

Plaintiff alleges a hodgepodge of allegations against Defendants Carlton Fields and Publix. The claims arose from the email and telephone communications noted above between Allen, Tinkler, and Bigelow—part-time attorney for the Town of Campbellton. Each of Plaintiff's allegations stems from actions pertaining to existing litigation. Furthermore, Plaintiff's complaint contains allegations which demonstrate the existence of this affirmative defense. Specifically, the complaint notes that Defendants communicated with Campbellton as part of their representation of Publix. Dkt. No. 16, pgs. 27, 28, 34, 35. Plaintiff even acknowledges that the attorneys "represented to Campbellton that they were provided with authority by Publix to take further action despite the dismissal of shareholders from the legal action by informing Campbellton that Publix was not satisfied with only shareholders of Publix being removed from the legal action." Dkt. No. 16, pg. 35. Plaintiff contends that at the time Allen sent the articles to Campbellton, Publix's shareholders had already

AO 72A
(Rev. 8/82)

been dismissed from the condemnation proceeding. Thus, Plaintiff contends that although the litigation itself still existed, Allen's representation of Publix had ended. It is Plaintiff's contention that at the time of the communications between Allen, Tinkler, and Bigelow, Publix no longer had an interest in the litigation. However, Carlton Fields had filed a Motion to Intervene on March 29 that was still pending. Publix, therefore, remained a potential intervenor at the time of the communications between Allen, Tinkler, and Bigelow. Feb. 18, 2014 Motions Hearing, 2:40:30-2:43:18. At the time, Carlton Fields was still counsel of record for Publix. Id. at 2:43: 18-22. Allen affied that he served a notice of hearing on the Motion to Intervene on April 1, 2011, and the hearing was scheduled for April 7, 2011. Dkt. No. 71-1, § 11. At the time, the case was still sealed and did not become unsealed until May 18, 2011. Id. The record is clear that, as indicated in the amended complaint, Carlton Fields attorneys Allen and Tinkler were still involved in the litigation on behalf of their client, Publix, following the voluntary dismissal without prejudice of Publix

shareholders. Consequently, the Florida litigation privilege applies to bar the claims against Carlton Fields and Publix, which are premised on communications that occurred within the scope of litigation. As explained below, there are additional, substantive, and independent grounds for dismissing both Carlton Fields and Publix.

### C. Substantive Claims

### 1) Intentional Infliction of Mental Anguish and Emotional Distress (Claims 59, 78, 99, and 119)

Plaintiff alleges that Defendants are directly and vicariously liable for Intentional Infliction of Mental Anguish and Emotional Distress. Intentional Infliction of Emotional Distress requires proving: 1) the defendant acted intentionally or recklessly; 2) the conduct was outrageous; 3) the outrageous conduct caused the distress; 4) the distress was severe. Dominguez v. Equitable Life Assur. Soc. of U.S., 438 So.2d 58, 59 (Fla. Dist. Ct. App. 1983). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. Dist. Ct. App. 2007)(citing Gandy v. Trans World Computer Tech. Group, 787

So.2d 116, 119 (Fla. Dist. Ct. App. 2001)). This cause of action requires that the facts "go beyond all possible bounds of decency." Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. at 279. While Plaintiff may have suffered some level of distress following the publication of information about him, Plaintiff has not plead facts sufficient to meet the standard for this cause of action. The facts plead by Plaintiff do not exceed "all possible bounds of decency." The Court is, therefore, obligated to grant the 12(b)(6) Motion for this claim.

**2) Abuse of Disabled Adult (Claims 60, 79, 100, 120)**

Plaintiff alleges that Defendants are directly and vicariously liable for the abuse of a disabled adult. Florida Statute § 825.102 specifies the crime of abuse of a disabled adult to be:

(a) Intentional infliction of physical or psychological injury upon an elderly person or disabled adult;

(b) An intentional act that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult; or
(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult.

F.S.A. § 825.102.

Plaintiff has alleged insufficient facts to satisfy this statute, specifically that Defendants inflicted any injury upon a disabled adult. Plaintiff conceded at the February 18, 2014 Motions Hearing before this Court that at the date of his alleged injury, Defendant was no longer considered incapacitated and was able to perform the normal activities of daily life. Motions Hearing, 3:27-25 - 3:29:34. He contended instead that his history of mental illness is sufficient to qualify him as a disabled adult. Id. Under this statute, "disabled adult" means:

> a person 18 years of age or older who suffers from a condition of physical or mental incapacitation due to a developmental disability, organic brain damage, or mental illness, or who has one or more physical or mental limitations that restrict the person's ability to perform the normal activities of daily living.

F.S.A. § 825.101(4).

AO 72A
(Rev. 8/82)

As Plaintiff was no longer incapacitated and was able to perform the normal activities of daily living, he does not qualify as an appropriate victim under this statute. Furthermore, Plaintiff brings these claims pursuant to O.C.G.A. § 51-1-6, which is a Georgia statute and therefore inapplicable as Florida law applies. Thus, these claims must be dismissed.

### 3) Tortious Interference with Prospective Economic Advantage (Claims 61, 85, 105, 125) & Intentional Tortious Interference with Prospective Economic Advantage (Claims 64, 83, 103, 123)

Plaintiff alleges that Defendants are directly and vicariously liable for Tortious Interference with Prospective Economic Advantage and Intentional Tortious Interference with Prospective Economic Advantage. Although Florida law does not include claims by these names, it does recognize a cause of action for Intentional Interference With an Advantageous Business Relationship. The elements for this claim are: 1) A business relationship existed under which Plaintiff had legal rights; 2) Defendants intentionally and unjustifiably interfered with that relationship; 3) breach of the relationship occurred; and 4) Plaintiff suffered damages. Fort Lauderdale Riverwalk

Props., Inc. v. White, 531 So.2d 739, 740 (Fla. Dist. Ct. App. 1988). "An essential element of a claim for intentional interference with an advantageous business relationship is that the interference be both direct and intentional." Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n, 497 So.2d 1261, 1263 (Fla. Dist. Ct. App. 1986). Plaintiff alleges that intentional interference occurred when Defendants allegedly threatened to disseminate the articles throughout Florida. Dkt. No. 16, pgs. 77, 79, 89, 90, 100, 101, 111, 113. However, Plaintiff does not allege facts sufficient to show that he was involved in a business relationship that Defendants caused to be breached. Rather, Plaintiff merely states that "reasonable expectancy" existed that, but for the interference, Campbellton would have "acquired limited-agent authority over control-blocks of voting rights in non-domestic mutual insurance companies selling policies in Florida" and would have "acquired through demutualization by acquisition those non-domestic mutual insurance companies named in the legal action." Dkt. No. 16, pgs. 79, 89, 100, 112. Plaintiff has not plead facts to show the existence of a business relationship

AO 72A
(Rev. 8/82)

under which Plaintiff had legal rights; Plaintiff bases his

factual allegations for this claim on "reasonable

expectancy" rather than legal rights. Furthermore,

Plaintiff has not plead facts to show that the

communications between Carlton Fields employees and Bigelow

were unjustified. Considering that Carlton Fields was

unable to access a complaint involving allegations filed

against a client and considering that Carlton Fields had

scheduled a pending motion to intervene, thereby indicating

Publix's continued interest in the case, communications by

Carlton Fields attorneys attempting to convince Bigelow

that his client should dismiss claims against Publix seem

not only justified, but expected of diligent attorneys in

such a case. Without a factual basis alleged to support

this claim, the Court is required to grant Defendants'

12(b)(6) Motion on this claim.

**4) Obstruction of Justice by Interference With Judicial Administration (Claims 62, 66, 80, 86, 101, 106, 121, 126)**

Plaintiff alleges that Defendants are directly and

vicariously liable for obstructing justice by disseminating

information contained within Plaintiff's probate court

AO 72A
(Rev. 8/82)

records (Dkt. No. 16, pg. 78), by making threats "to Campbellton that Publix would disseminate Plaintiff's confidential psychiatric information to the press . . . *unless* the Town Council withdrew the case . . . ." (Dkt. No. 16, pgs. 80, 91, 102, 114), by "disseminat[ing] [] information contained within Plaintiff's sealed records of the probate court to Campbellton" and thus "interfere[ing] with the probate court's legal mandate to administer Plaintiff's conservatorship and guardianship outside the public eye." Dkt. No. 16, pgs. 99, 110.

In Florida, various offenses can qualify as "obstruction of justice." See F.S.A. § 843.01-843.21[3]. Emailing publicly-

---

[3] The specific offenses include: F.S.A. 843.01: Resisting officer with violence to his or her person, F.S.A. 843.02: Resisting officer without violence to his or her person, F.S.A. 843.021: Unlawful possession of a concealed handcuff key, F.S.A 843.025: Depriving officer of means of protection or communication, F.S.A. 843.03: Obstruction by disguised person, F.S.A. 843.04: Refusing to assist prison officers in arresting escaped convicts; F.S.A. 843.05: Resisting timber agent, F.S.A. § 843.06: Neglect or refusal to aid peace officers, F.S.A. § 843.08: Falsely personating officer, etc., F.S.A. § 843.081: Prohibited use of certain lights, F.S.A. § 843.085: Unlawful use of police badges or other indicia of authority, F.S.A. § 843.0855: Criminal actions under color of law or through use of simulated legal process, F.S.A. § 843.09: Escape through voluntary action of officer, F.S.A. § 843.10: Escape by negligence of officer, F.S.A. § 843.11: Conveying tools into jail to aid escape; forcible rescue, F.S.A. § 843.12: Aiding escape, F.S.A. § 843.13: Aiding escape of juvenile inmates of correctional institutions, F.S.A. § 843.14: Compounding felony, F.S.A. § 843.15: Failure of defendant on bail to appear, F.S.A. § 843.16: Unlawful to install or transport radio equipment using assigned frequency of state or law enforcement officers; F.S.A. § 843.165: Unauthorized transmissions to and interference with governmental and associated radio frequencies prohibited; F.S.A. § 843.167: Unlawful use of police communications; F.S.A. § 843.17: Publishing name and address of law enforcement officer; F.S.A. § 843.18: Boats; fleeing or attempting to elude a

AO 72A
(Rev. 8/82)

released articles that Defendants acquired through an online search are factual pleadings that do not support any of the Florida obstruction of justice offenses. Consequently, Plaintiff has failed to sufficiently plead this claim.

### 5) Violation of O.C.G.A. § 29-9-18 (Claims 63, 82, 102, 122)

Plaintiff alleges that Defendants are directly and vicariously liable for violations of O.C.G.A. § 29-9-18, which is inapplicable because Florida law governs this case. The statute states that:

(a)    All of the records relating to any minor or adult guardianship or conservatorship that is granted under this title shall be kept sealed . . . .

(b)    A request by other interested parties to examine the sealed records shall be by petition to the court and the ward and guardian or conservator shall have at least 30 days' prior written notice of a hearing on the petition . . . .

O.C.G.A. § 29-9-18.

Even if the Court could apply this statute, Plaintiff has not alleged facts to show that it was violated. Plaintiff claims that Defendants "breached said duty of care to

---

law enforcement officer; F.S.A. § 843.19: Offenses against police dogs, fire dogs, SAR dogs, or police horses; F.S.A. § 843.20: Harassment of participant of neighborhood crime watch program prohibited; F.S.A. § 843.21: Depriving crime victim of medical care.

Plaintiff by disseminating Plaintiff's information contained within Plaintiff's probate court records to Campbellton without first filing a petition for an order of the court unsealing such information and the holding of a hearing at which Plaintiff had right to attend." Dkt. No. 16, pgs. 78, 88, 99, 111. Plaintiff does not allege that Allen, Tinkler, Carlton Fields, and Publix wrongly obtained Plaintiff's records from the court. Rather, Plaintiff acknowledges that these particular Defendants obtained information about Plaintiff that had already been published in articles online. Plaintiff does not allege that these Defendants ever even obtained his records. The facts are therefore inapplicable to this statute and the Court must therefore grant Defendants' 12(b)(6) Motion for this claim.

### 6) Tortious Interference With Contractual Relations (Claims 65, 84, 104, 124)

Plaintiff alleges that Defendants are directly and vicariously liable for tortious interference with contractual relations. This cause of action requires proving: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant;

AO 72A
(Rev. 8/82)

(3) an intentional and unjustified interference with the relationship by the defendant; and 4) damages to the plaintiff as a result of the breach of the relationship." Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Florida, Inc., 832 So.2d 810, 814 (Fla. Dist. Ct. App. 2002). Plaintiff alleges that by disseminating the articles about Plaintiff, Defendants "interfered with contractual relations between the Gas District and Campbellton in which Plaintiff held an ultimate beneficial financial interest." Dkt. No. 16, pg. 80, 90, 101, 113. Plaintiff has not plead facts to show that a business relationship existed, nor that Defendants intentionally and unjustifiably interfered with it. Rather, he relies on conclusory allegations. Thus, these claims must be dismissed.

### 7) 18 U.S.C. § 371 – Conspiracy to Violate 18 U.S.C. § 1951 Interference with Commerce by Extortion Consisting of Threats, Violence or Fear (Claims 68, 88, 108, 128)

Plaintiff alleges that Defendants are directly and vicariously liable for violations of 18 U.S.C. § 371. However, this statute only applies where "two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any

44

agency thereof . . . ." Plaintiff has not alleged any facts pertaining to an offense against the United States or any attempt to defraud the United States. Thus, these claims must be dismissed.

**8) 18 U.S.C. § 875 (Claims 69, 89, 109, 129)**

Plaintiff alleges that Defendants are directly and vicariously liable for violations of 18 U.S.C. § 875. However, this statute is a federal criminal statute outlining illegal interstate communications pertaining to kidnapping and extortion. See 18 U.S.C. § 1875. Plaintiff has not alleged any facts remotely related to this statute. Thus, these claims must be dismissed.

**9) F.S.A. § 838.021(1)(a) and (b) – Corruption by threat against public servant (Claims 70, 90, 110, and 130)**

Plaintiff alleges that Defendants directly and vicariously violated F.S.A. § 838.021(1)(a) and (b). Plaintiff alleges that Defendants did so by threatening to release the articles to the Florida press which would disclose Plaintiff's work for Campbellton and thereby embarrass the city. Dkt. No. 16, pgs. 82, 93, 104, 117. This statute provides:

(1) It is unlawful to harm or threaten to harm any public servant, his or her immediate family, or any other person with whose welfare the public servant is interested with the intent to:
(a) Influence the performance of any act or omission that the person believes to be, or that the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.
(b) Cause or induce the public servant to use or exert, or procure the use or exertion of, any influence upon or with any other public servant regarding any act or omission that the person believes to be, or that the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.

F.S.A. § 838.021.

Plaintiff has not plead any facts to show threatening behavior toward a public official. Furthermore, this statute does not provide for a civil remedy. <u>See</u> F.S.A. § 838.021. Thus, these claims must be dismissed.

**10) F.S.A. § 777.04(3) (Claims 71,73,91,93,111,113,131,133)**

F.S.A. § 777.04(3) states: "A person who agrees, conspires, combines, or confederates with another person or persons to commit any offense commits the offense of criminal conspiracy, ranked for purposes of sentencing as provided in subsection (4)." F.S.A. § 777.04(3). Plaintiff alleges two conspiracies: 1) "Conspiracy to Corruption by

46

Threat Against Public Servant" (Claims 71, 91, 111, 131)
and 2) "Conspiracy to Violate Florida Statute § 836.05"
(Claims 73, 93, 113, and 133). With regard to the first
alleged conspiracy, Plaintiff alleges that Allen and
Tinkler "conspired to threaten public officials for
purposes of coercing Campbellton to withdraw the legal
action from the court" (Dkt. No. 16, pgs. 83, 94) and that
Carlton Fields and Publix are vicariously liable for this
conspiracy. Dkt. No. 16, pgs. 105, 120. Plaintiff uses the
same language with regard to the second alleged conspiracy
that he does in stating the basis for the first alleged
conspiracy. Dkt. No. 16, pgs. 84, 95, 106, 120. However, in
Florida, "a cause of action for civil conspiracy exists . .
. only if 'the basis for the conspiracy is an independent
wrong or tort which would constitute a cause of action if
the wrong were done by one person.'" Blatt v. Green, Rose,
Kahn & Piotrkowski, 456 So.2d 949, 951 (Fla. Dist. Ct. App.
1984)(quoting American Diversified Ins. Servs., Inc. v.
Union Fidelity Life Ins. Co., 439 So.2d 904, 906 (Fla.
Dist. Ct. App. 1983). Plaintiff has not shown an
independent tort or wrong on which to base either

conspiracy allegation. Thus, these claims must be dismissed.

### 11) F.S.A. § 836.05 – Threats; extortion (Claims 72, 92, 112, 132)

F.S.A. § 836.05 pertains to threats and extortion. See F.S.A. § 836.05. Plaintiff alleges that Defendants are directly and vicariously liable for threatening public officials to "coerce Campbellton to withdraw the legal action from the court." Dkt. No. 16, pgs. 83, 94, 105, 119). However, this statute does not support a civil cause of action. Bass v. Morgan, Lewis & Bockius, 516 So.2d 1011, 1011 (Fla. Dist. Ct. App. 1987). Thus, these claims must be dismissed.

### 12) F.S.A. § 812.014(1)(b) (Claims 74, 94, 114, 134)

F.S.A. § 812.014 is Florida's theft statute. Plaintiff alleges that Defendants directly and vicariously committed theft because they "knowingly used Plaintiff's intangible personal property, consisting of Plaintiff's confidential psychiatric information, for purposes of benefiting Publix without permission of Plaintiff (owner)." Dkt. No. 16, pgs. 84, 95, 106, 120. F.S.A. § 812.014(1)(b) states:

48

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
>> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

F.S.A. § 812.014(1)(b).

Florida law provides a remedy for civil theft. See F.S.A. § 772.11. "In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent." Florida Desk, Inc. v. Mitchell Intern., Inc., 817 So.2d 1059, 1060 (Fla. Ct. App. 2002)(citing Gersh v. Cofman, 769 So.2d 407, 409 (Fla. Ct. App. 2000). The Florida remedy for civil theft requires: "Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section." F.S.A. § 772.11(1). Plaintiff has not plead facts to show that he followed this procedure. Consequently, the Court must dismiss this claim.

**13) F.S.A. § 775.0844 – White Collar Crime (Claims 75, 95, 115, 135) and Aggravated White Collar Crime (Claims 75, 116, 136)**

Plaintiff alleges that Defendants directly and
vicariously committed white collar crimes and aggravated
white collar crimes previously discussed in this Order.
F.S.A. § 775.0844 requires a defendant to have committed a
predicate offense. Headley v. State, 90 So.3d 912, 914
(Fla. Dist. Ct. App. 2012). "[T]he white collar crime
statute was geared toward prosecuting those individuals who
engage in a pattern of committing felony offenses involving
fraud and deceit." Id. For the reasons stated above,
Plaintiff's claims for the predicate offenses must be
dismissed and therefore Plaintiff's claims under F.S.A.
§ 775.0844 must also be dismissed as well.

**14) 18 U.S.C. § 241 – Conspiracy against rights –
Plaintiff's Ninth Amendment Protection of Plaintiff's
Inalienable Rights, Right to Privacy (Claims 76, 97,
117, 138) & Conspiracy Against Rights – Plaintiff's
Fifth Amendment Protection of Plaintiff's Right to Due
Process (Claims 77, 98, 118, 139)**

Plaintiff alleges that Defendants are directly and
vicariously liable for violations of 18 U.S.C. § 241. This
statute prohibits conspiracies:

> to injure, oppress, threaten, or intimidate any
> person in any State, Territory, Commonwealth,
> Possession, or District in the free exercise or
> enjoyment of any right or privilege secured to him

by the Constitution or laws of the United States,
or because of his having so exercised the same.

18 U.S.C. § 241.

Even if Plaintiff had sufficiently plead facts to show

violations of this statute, this statute "does not

authorize civil suits or give rise to civil liability."

Durso v. Summer Brook Preserve Homeowners Ass'n, 641

F.Supp.2d 1256, 1267 (M.D. Fla. 2008)(quoting Grant v.

Hartery, NO. 2:06-cv-429-FtM-34DNC, 2008 WL 786328, at *12

(M.D. Fla. Mar. 20, 2008). Therefore, these claims must be

dismissed.

### 15) 18 U.S.C. § 1951 – Interference with Commerce by Threats or Violence (Claims 67, 87, 107, 127)

Plaintiff alleges that Defendants are directly and

vicariously liable for interfering with commerce by

extortion consisting of threats, violence or fear. Title 18

U.S.C. § 1951 provides:

> (a) Whoever in any way or degree obstructs,
> delays, or affects commerce or the movement of any
> article or commodity in commerce, by robbery or
> extortion or attempts or conspires so to do, or
> commits or threatens physical violence to any
> person or property in furtherance of a plan or
> purpose to do anything in violation of this
> section shall be fined under this title or
> imprisoned not more than twenty years, or both.
> (b) As used in this section—

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951.

Plaintiff asserts that Defendants' "extortionate threats coerced Campbellton to withdraw the legal action" and "caused the *depletion of assets* of the reasonable expectancy of acquiring limited-agent authority over voting rights in mutual insurance companies with operations in multiple states." Dkt. No. 16, pgs. 81, 92, 103, 115.

Plaintiff provides no facts to support anyone making

AO 72A
(Rev. 8/82)

extortionate threats. Furthermore, courts which have interpreted 18 U.S.C. § 1951 have found no legislative intent to imply a private cause of action under this statute. <u>Wisdom v. First Midwest Bank, of Poplar Bluff</u>, 167 F.3d 402, 408 (8th Cir. 1999)("Though fewer courts have addressed the issue of a private right of action under the extortion statute, those that have found it to be a bare criminal statute with no support for a private cause of action in the legislative history.") Therefore, these claims must be dismissed.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 45) is **GRANTED** as to Defendants Alred, Cunningham, and Ruple, and **DENIED** as to Defendants Bacaj and Consolidated. Therefore, Alred, Cunningham, and Ruple are dismissed from this action. The second Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 59) is **GRANTED**. Therefore, Defendant Ayers is dismissed from this action. The third Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 71) is **GRANTED**. Therefore, Defendants Allen and Tinker are dismissed from

AO 72A
(Rev. 8/82)

this action. The Motion to Dismiss for Failure to State a Claim (Dkt. No. 70) is **GRANTED**. Therefore, Carlton Fields and Publix are dismissed from this action.

SO ORDERED, this 31ST day of March , 2014.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)